1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

BOYD ENFIELD,

8

    Plaintiff,

No. 1:15-CV-03032-RHW

9

    v.

10

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

11

12

    Defendant.

13

14

15

16

17

18

19

20

      Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 14 & 19. Mr. Enfield brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for additional proceedings consistent with this order.

## I.    Jurisdiction

Mr. Enfield filed for Disability Insurance Benefits on December 15, 2011, AR 182, and Supplemental Security Income on February 9, 2012. AR 185.  His amended alleged onset date is August 1, 2003. AR 182. Mr. Enfield's application was initially denied on June 12, 2012, AR 107-109, and on reconsideration on October 23, 2012, AR 124-125.

A hearing with Administrative Law Judge ("ALJ") Virginia M. Robinson occurred on August 1, 2003. AR 25-54. On November 13, 2013, the ALJ issued a decision finding Mr. Enfield ineligible for disability benefits. AR 10-20.  The Appeals Council denied Mr. Enfield's request for review on January 8, 2015, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Enfield timely filed the present action challenging the denial of benefits, on February 23, 2015. ECF No. 4. Accordingly, Mr. Enfield's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

1    can be expected to last for a continuous period of not less than twelve months." 42

2    U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

3    under a disability only if the claimant's impairments are of such severity that the

4    claimant is not only unable to do his previous work, but cannot, considering

5    claimant's age, education, and work experience, engage in any other substantial

6    gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

7    1382c(a)(3)(B).

8        The Commissioner has established a five-step sequential evaluation process

9    for determining whether a claimant is disabled within the meaning of the Social

10    Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

11    *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

12        Step one inquires whether the claimant is presently engaged in "substantial

13    gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

14    activity is defined as significant physical or mental activities done or usually done

15    for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

16    substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

17    404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

18        Step two asks whether the claimant has a severe impairment, or combination

19    of impairments, that significantly limits the claimant's physical or mental ability to

20    do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3**

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

burden, the Commissioner must establish that (1) the claimant is capable of

performing other work; and (2) such work exists in "significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed

by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

*Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

whether the Commissioner's findings are supported by substantial evidence, "a

reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

F.2d 498, 501 (9th Cir. 1989)).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT ~ 5**

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Mr. Enfield was 32 years old at the alleged date of onset. AR 167. He has earned his GED. AR 50-51. Mr. Enfield sustained injuries in a car accident in 2003, and the ALJ found Mr. Enfield to suffer from degenerative disc disease. AR 12. Mr. Enfield has also been diagnosed by a consultative examiner to have impulse control anger issues, psychotic disorder,

1    antisocial personality disorder, and personality disorder not otherwise specified.

2    AR 30. He also has a history of methamphetamine use. AR 32-33.

3        Mr. Enfield previously worked as a telemarketer. AR 45-46. He also did

4    shop maintenance work, ground manager work, and packed apples prior to his car

5    accident. AR 19. He has some limited work experience from prison. AR 45.

6                    **V.    The ALJ's Findings**

7        The ALJ determined that Mr. Enfield was not under a disability within the

8    meaning of the Act from August 1, 2003, his alleged date of onset.  AR 20.

9        **At step one**, the ALJ found that Mr. Enfield had not engaged in substantial

10   gainful activity since August 1, 2003 (citing 20 C.F.R. §§ 404.1571 *et seq.* &

11   416.971 *et seq*.).   AR 12.

12       **At step two**, the ALJ found Mr. Enfield had the following severe

13   impairments: degenerative disc disease (citing 20 C.F.R. §§ 404.1520(c) &

14   416.920(c)). AR 12.

15       At **step three**, the ALJ found that Mr. Enfield did not have an impairment or

16   combination of impairments that meets or medically equals the severity of one of

17   the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 22-25.

18       At **step four**, the ALJ found Mr. Enfield had the residual functional capacity

19   to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with these

20   exceptions: (1) he can lift up to twenty pounds occasionally and lift or carry ten

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 7**

pounds frequently; (2) he can stand or walk approximately six hours in an eight-hour workday; (3) he can sit approximately six hours in an eight-hour workday with normal breaks; (4) he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and (5) he can occasionally balance, stoop, kneel, crouch, and crawl. AR 16.

The ALJ determined that Mr. Enfield is able to perform his past relevant work as a telemarketer because it does not require activities precluded by his residual functional capacity. AR 18-19.

At **step five**, the ALJ found that, in the alternative, in light of his age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are also other jobs that exist in significant numbers in the national economy that he can perform. AR 19.

## VI.    Issues for Review

Mr. Enfield argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) rejecting Mr. Enfield's mental health impairments at step two; (2) improperly rejecting the opinions of Mr. Enfield's medical providers; (3) improperly rejecting Mr. Enfield's subjective complaints and lay testimony; (4) failing to conduct a proper step four assessment; and (5) failing to meet the step five burden.

1

## VII.   Discussion

2

### A. The ALJ Erred in Her Step Two Analysis.

3        At step two in the five-step sequential evaluation for Social Security cases,

4    the ALJ must determine whether a claimant has a medically severe impairment or

5    combination of impairments. An impairment is found to be not severe "when

6    medical evidence establishes only a slight abnormality or a combination of slight

7    abnormalities which would have no more than a minimal effect on an individual's

8    ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting

9    SSR 85-28). Step two is generally "a de minimis screening device [used] to

10   dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a

11   medically severe impairment only when the conclusion is clearly established by the

12   record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v.*

13   *Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

14       The ALJ found Mr. Enfield's mental impairments, impulse control anger

15   issues and antisocial personality disorders, as diagnosed by Dr. Manuel Gomes,

16   PhD, to be non-severe, and she found no evidence of psychotic disorder. AR 13-

17   15.  Dr. Gomes found Mr. Enfield capable of performing simple, repetitive tasks

18   and some complex, detailed tasks, and generally Mr. Enfield was mildly impaired.

19   AR 431-32. However, Dr. Gomes found Mr. Enfield severely impaired in his

20   ability to deal with usual stress encountered in the workplace. AR 432. The ALJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 9

1    rejected this portion of the opinion because, the ALJ asserted, it was based on the

2    subjective information of Mr. Enfield that was not credible. AR 14. *See infra* pp.

3    16-20.

4        Under step 2, an impairment is not severe if it does not significantly limit a

5    claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d

6    1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). These include the

7    ability to respond appropriately to supervision, co-workers, and usual work

8    situations. Id. (citing 20 C.F.R. § 404.1521(b)(5)). Therefore, the opinion that Mr.

9    Enfield could not adapt to normal workplace stress, particularly with regard to

10   interpersonal relations, should qualify as a severe impairment under step 2.

11       Because Mr. Enfield was found to have at least one severe impairment, this

12   case was not resolved at step two. Mr. Enfield does not assign error to the ALJ's

13   finding at step three. Thus, any error in the ALJ's finding at step two is harmless, if

14   all impairments, severe and non-severe, were considered in the determination Mr.

15   Enfield's residual functional capacity. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th

16   Cir. 2007) (holding that a failure to consider an impairment in step two is harmless

17   error where the ALJ includes the limitations of that impairment in the

18   determination of the residual functional capacity). Because the ALJ failed to

19   account for all of these impairments in step four, the Court finds this was not

20   harmless error.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10**

**B.  The Rejection of Some of Mr. Enfield's Doctors was in Error.**

**1.  Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than

1    his or her own conclusions and explain why he or she, as opposed to the provider,

2    is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

3    **2. Dr. Gomes**

4        Dr. Gomes was an examining doctor. The ALJ and the parties do not cite to

5    a contrary opinion, nor does the Court's review of the record find one. Non-

6    examining doctor Dr. Diane Fligstein, PhD, corroborates the finding of Dr. Gomes

7    and recommends that Mr. Enfield to work away from the  general public, as he is

8    only "capable of superficial coworker contact of a non-cooperative nature." AR 66.

9    Another non-examining doctor, Dr. Steven Haney, MD, affirmed this opinion and

10   also limited work settings to those "that require minimal interpersonal contact."

11   AR 87. Thus, in the absence of a contrary opinion, the ALJ was required to provide

12   clear and convincing reasons to reject Dr. Gomes's opinion. *Lester*, 81 F.3d at 830.

13       The ALJ afforded some weight to Dr. Gomes's opinion, but she rejected his

14   findings of psychotic disorder, AR 13, and his assessment that Mr. Enfield has

15   severe limitations in his ability to deal with usual stress encountered in a

16   workplace. AR 14. The ALJ reasoned that these findings were inconsistent with

17   the record and based on the unreliable reports of the claimant. AR 13-14.

18       An ALJ may rely on doubts about credibility to reject part of a doctor's

19   opinion, but they must also sustain the clear and convincing burden to reject that

20   which is not based on subjective complaints. *See Edlund*, 253 F.3d at 1159 (finding

error with an ALJ's reliance on credibility doubts to reject the entire report of a physician, including portions that could be deemed otherwise reliable).

The ALJ asserted that Dr. Gomes diagnosed a psychotic disorder based on hallucinations in prison. AR 13. At his appointment with Dr. Gomes, Mr. Enfield stated that he had problems with hallucinations when he was in "the hole" for five months at a time. AR 429. The available prison records do not reflect any behavioral problems. AR 362-385. However, the record does indicate that he was prescribed Celexa and Risperdal. AR 375. While the record does not demonstrate psychotic behavior, it also does not explain why his prison physicians chose to put Mr. Enfield on antipsychotic medication. *Id.* It is not unreasonable for Dr. Gomes to diagnose a psychotic condition based on a previous prescription of antipsychotic medication, even if the record does not specifically indicate instances of psychotic behavior.

Further, Dr. Gomes performed objective testing, in addition to reviewing Mr. Enfield's history. AR 427-432. An impairment may be determined by medically-acceptable clinical diagnoses, as well as objective medical findings. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). In this case, Dr. Gomes provides both. Upon review of the opinion, the Court notes no evidence of concern by Dr. Gomes that the testing performed was unreliable or that the doctor suspected malingering. AR 427-432. It is unclear how much the objective testing

versus subjective history influenced Dr. Gomes. Even the ALJ asserted that it appeared Dr. Gomes "relied <u>in part</u> on the claimant's self-report about his prison and past behavioral problems," AR 14 (emphasis added), which implies that the ALJ recognized some of the opinion was based on objective, clinical opinions.

The ALJ points to inconsistencies with Mr. Enfield's activities of daily living. The Court does not agree that having a family and romantic relationship are evidence that Mr. Enfield is not limited in his dealing with typical workplace stressors. Even the most extreme anxiety cases do not require complete isolation at all times, and the Court does not find that having family is preclusive from having disabling social conditions.

Further, the statement from Krista Lortie, Mr. Enfield's girlfriend, corroborates his personality impairments. The ALJ ignored this testimony entirely. *See infra* pp. 20-22.  Ms. Lortie stated that Mr. Enfield has problems getting along with family, friends, neighbors, and others. AR 242. Specifically, she stated that he "gets irritable and upset at others, sometimes for no real reason." *Id.* She also offered that Mr. Enfield "no longer goes and hangs out with old friends doing things they used to do." *Id.* Simply because Ms. Lortie has continued her relationship with Mr. Enfield despite his personality impairments, does not rise to a legally sufficient reason to reject the opinion of an examining doctor.

1    There is no evidence that Mr. Enfield regularly spends time in crowds,[1] and

2    the limited occasions that are spent in public are not inconsistent with the specific

3    limitations found by Dr. Gomes. For example, the ability to grocery shop (AR 261)

4    is not inconsistent with Dr. Gomes's assessment. Dr. Gomes offered a very specific

5    limitation that was tailored to "the usual stress encountered in a competitive

6    workplace." AR 432. Dr. Gomes opined that because Mr. Enfield has not learned

7    to properly manage his stress, in light of personality disorder, he would walk away

8    from a particularly stressful situation. *Id.* Whereas this would be unacceptable

9    behavior in a workplace, it would not be significant in a grocery store.

10    Finally, the Commissioner is unavailable with the argument that Dr.

11    Gomes's opinion is inconsistent because Mr. Enfield had never been let go from a

12    job because he was unable to get along with others. ECF No. 19 at 8. As Dr.

13    Gomes correctly points out, Mr. Enfield "has not had a significant work history."

14    AR 431. It is not unreasonable that he has not been dismissed, particularly if he has

15    spent a large portion of his adult life in prison.

16    The ALJ failed to provide clear and convincing reasons for rejecting the

17    opinion of Dr. Gomes. The ALJ did not account for any mental impairments in her

18    calculation of the residual functional capacity. Thus, this error is not harmless

19

20    [1] The Court does not find the record supports the ALJ's conclusion that Mr. Enfield attends church regularly. There is a single mention of church in reference to Mr. Enfield's rejection of medication for his bipolar disorder. AR 406.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15**

1   because it cannot be considered inconsequential to the determination of disability.

2   *Molina*, 674 F.3d at 1115.

3   **3. Dr. Fligstein**

4        ALJ Robinson gave little weight to Dr. Fligstein's opinion. Dr. Fligstein

5   opined that Mr. Enfield was capable only of superficial contact and should work

6   away from the general public. Her opinion was consistent with that of Dr. Gomes.

7        The ALJ did not adopt the opinion because it "appear[ed] to rely heavily on

8   Dr. Gome's [sic] evaluation and his diagnoses of antisocial personality disorder

9   and anger impulse control issues." AR 14. As discussed previously, the ALJ did

10  not properly consider all of Dr. Gomes's opinion, so this alone cannot constitute a

11  legally sufficient reason to disregard Dr. Fligstein's opinion. *See supra* pp. 12-16.

12  Additionally, Dr. Fligstein references additional sources of information to form her

13  opinion than just Dr. Gomes's diagnoses. AR 63.

14       The ALJ failed to properly consider Dr. Fligstein's opinion. Again, because

15  none of Mr. Enfield's mental impairments were accounted for in his residual

16  functional capacity, this error is not harmless.

17  **C. The ALJ properly discounted Mr. Enfield's credibility.**

18       An ALJ engages in a two-step analysis to determine whether a claimant's

19  testimony regarding subjective symptoms is credible.  *Tommasetti v. Astrue,* 533

20  F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence

suggesting malingering, "the ALJ can reject the claimant's testimony about the

severity of [his] symptoms only by offering specific, clear, and convincing reasons

for doing so." *Id.*

      In weighing a claimant's credibility, the ALJ may consider many factors,

including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When

evidence reasonably supports either confirming or reversing the ALJ's decision, the

Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient: rather the ALJ

must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester*, 81 F.3d at 834.

### a. Mr. Enfield's daily activities

      The Court already addressed the ALJ's alleged inconsistencies between Mr.

Enfield's mental impairments and his daily activities in the analysis regarding Dr.

Gomes's opinion. *See supra* pp. 12-16.  Thus what remains here are the inconsistencies between Mr. Enfield's physical impairments (his back problems) and his daily activities.

The ALJ noted several activities of daily living that are inconsistent with Mr. Enfield's allegations of the level of impairment related to his back. In particular, the ALJ noted: personal care, meal preparation, light household chores, laundry, shopping, walking around an orchard, fishing, and mowing the lawn in stages. AR 18. These activities are inconsistent with someone that alleges disabling back pain.

In addition, the record shows other activities that are inconsistent with disabling back pain. For example, in September 2011, after his alleged onset date, Mr. Enfield injured his back while splitting wood. AR 416-420. Mr. Enfield told emergency room staff that he believed he picked up too heavy a piece of wood. AR 419. Again, in December 2012, Mr. Enfield sought treatment for injuring his upper back after lifting a heavy box at Costco. AR 451.

The Court does not find the ALJ erred when assessing Mr. Enfield's credibility because his activities of daily living are inconsistent with his alleged physical impairments.

b. **Inconsistency with the record**

The ALJ asserted that Mr. Enfield's statements regarding his time in prison are inconsistent with the record. For example, Mr. Enfield told Dr. Gomes that he

suffered hallucinations while in "the hole" in prison. AR 429. There is nothing in

the record to corroborate this. AR 362-385. Complicating the review, there are no

disciplinary records at all on file.

Although the prison records lack specificity, they do demonstrate that Mr.

Enfield was being treated with antipsychotic medication. This may or may not be

due to hallucinations, but it does demonstrate the diagnosis of some form of

psychotic disorder. Thus, the ALJ's conclusion that the claimant has no established

psychotic disorder is not supported by the record. The Court does not need to rule

on whether the overall lack of evidence relating to Mr. Enfield's allegations of his

experiences in prison, however, because the ALJ did not err in the finding of

credibility with regard to his daily activities.

### c.  Failure to treat

Also in consideration of Mr. Enfield's credibility, the ALJ noted that he

failed to continue treatment for both mental and physical impairments. A

claimant's statements may be less credible when treatment is inconsistent with the

level of complaints or a claimant is not following treatment prescribed without

good reason. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). When

refusing prescribed treatment, the reasons presented for not following the treatment

must be related to the mental impairment and not a matter of personal preference.

*Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 19**

Mr. Enfield did seek treatment for his back issues as they arose, but he did not continue with recommended physical therapy. AR 355. The record indicates that he only attended one visit and never followed up for the second. *Id.* The ALJ opined that this is not consistent with disabling pain, and the Court accepts this opinion.

As previously discussed, Mr. Enfield was prescribed Celexa and Riperdal during his time in prison. AR 375. Despite his own admission that he did better while on the medication, Mr. Enfield chose not to continue the medications. AR 406. He opted rather to manage his condition "spiritually." *Id.* The record, however, does not demonstrate that he sought regular consultation with a religious figure, and both he and Ms. Lortie stated that he did not attend church. AR 241, 262. Mr. Enfield also stated to Dr. Gomes that he has not sought any outpatient mental health services. AR 428.

There is nothing that indicates Mr. Enfield's treatment is not a matter of personal preference, and thus the ALJ was permitted to use this lack of treatment in an adverse credibility determination. *Molina*, 674 F.3d at 1114.

**D.  The ALJ erred in part with regard to lay witness testimony.**

Mr. Enfield's long-term girlfriend Ms. Lortie provided a third-party function report in March 2012. AR 237-244. "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses,

and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996).

An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993). The ALJ provides no reasons, much less germane ones, to discount Ms. Lortie's testimony. Rather, the ALJ does not address it at all. This in error.

An ALJ's failure to consider competent lay witness testimony is harmless only when "it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2006). When applying this rule, the Court must determine that failure to consider could not be "inconsequential to the ultimate nondisability determination." *Id.* at 1055. The error must be non-prejudicial to the claimant. *Id.* However, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior

harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *Molina,* 674 F.3d at 1117.

The ALJ rejected Mr. Enfield's credibility. *See supra* pp. 16-20. So far as the information provided by Ms. Lortie that is based on subjective information by Mr. Enfield, the ALJ's failure to address this lay witness testimony would be harmless error. *See Molina*, 674 F.3d at 1117.

However, the ALJ entirely rejected Mr. Enfield's mental impairments. In turn, she rejected any objective observations of those. There were no "well-supported reasons for rejecting" Ms. Lortie's testimony because it was not based on credibility evaluations of Mr. Enfield. *Id.* With regard to objective statements by Ms. Lortie, the ALJ needed to provide germane reasons for discounting. Thus, the Court finds the ALJ erred in part with regard to Ms. Lortie's testimony.

### E.  The ALJ Failed to Account for All of Mr. Enfield's Limitations in the Residual Functional Capacity and Erred in Steps Four and Five.

An ALJ may accept or reject restrictions that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001)(*citing Magallanes*, 881 F.2d at 756-57)). The ALJ was not required to accept the testimony of Mr. Enfield because he found him to be less than credible; however, he erred in other areas, particularly with regard to Mr. Enfield's mental impairments. Because the ALJ did not properly account for all of Mr. Enfield's

1    impairments, the Court finds that the residual functional capacity is incomplete. As

2    it flows from the incomplete residual functional capacity, the hypothetical

3    presented to the vocational expert and resulting determination that Mr. Enfield can

4    perform past relevant work, or alternatively, other work available in the national

5    economy, is flawed. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)

6    (holding that if a hypothetical fails to include all of limitations, the expert's

7    testimony has no evidentiary value).

8    **F.  Remedy.**

9          The Court has the discretion to remand the case for additional evidence and

10   findings or to award benefits.  *Smolen*, 80 F.3d at 1292.  The Court may award

11   benefits if the record is fully developed and further administrative proceedings

12   would serve no useful purpose.  *Id.*  Remand is appropriate when additional

13   administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d

14   759, 763 (9th Cir. 1989).  In this case, the Court finds that further proceedings are

15   necessary for a proper determination to be made.

16         On remand, the ALJ shall credit the opinions of Drs. Gomes and Fligstein.

17   The ALJ will also consider the objective testimony related to Mr. Enfield's mental

18   impairments that Ms. Lortie provided. Once accepting these opinions, the ALJ

19   shall recalculate the residual functional capacity, considering all impairments, and

20   then evaluate, based on this updated residual functional capacity, Mr. Enfield's

ability to perform past relevant work, as well as work available in the national

economy.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is not supported by substantial evidence and contains legal error.

Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 19,** is **DENIED.**

3.  The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this

Order, forward copies to counsel and **close the file**.

**DATED** this 11th day of March, 2016.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24**